**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **KIRK TEETS, et al.,** | ) | **CASE NO.  1:08 CV 789** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **CUYAHOGA COUNTY, OHIO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment filed by

Defendants, Cuyahoga County, Ohio; Cuyahoga County Department of Children and Family

Services (CCDCFS); former County employee Arlene Spencer; and, County employee Barbara

Morus.  Pursuant to Fed. R. Civ. P. 56, Defendants seek summary judgment as to all of

Plaintiffs' claims.

**Factual and Procedural Background**

**I.      Allegations of Sexual Abuse Against Kirk Teets.**

   **A.      Investigation.**

   This case stems from allegations of sexual abuse against Plaintiff, Kirk Teets.  On March

28, 2006, A.F., then 12 years of age, informed a school official that her step father, Kirk Teets,

had improperly touched her in a sexual manner.  The school contacted A.F.'s mother, Brandy

Teets.  (Deposition of Brandy Teets, at p. 4.)  The Parma, Ohio police were contacted.

(Deposition of Brandy Teets, at p. 18.)  The Parma Heights, Ohio police were also contacted

because the Teets family resided in Parma Heights Ohio.  (Id.)

### 1.     Cuyahoga County Department of Children and Family Services.

The school contacted the Cuyahoga County Department of Children and Family Services (CCDCFS) through the "child abuse hotline."  (Deposition of Sherry Porach at pp. 9-11.) Caseworker Arlene Spencer was randomly assigned to the matter.  Ms. Spencer's supervisor was Barbara Morus.  (Deposition of Arlene Spencer at p. 56.)  CCDCFS staff assigned the matter a "priority 2, fast response," requiring the assigned worker to attempt face to face contact with the child victim within two hours.  (Id. at pp. 114-115.)

Ms. Spencer went to the school and A.F. provided a written statement of what had happened to her.  (Spencer Depo. at p. 129; Exhibit 1 to Spencer Depo.)  The document stated that Mr. Teets, "stuck his fingers in my peach . . ."  "Peach" was a word used for her vagina. (Deposition of Pete Mattison at p. 175.)  A.F.'s mother, Brandy Teets, came to the school and met with A.F. and Ms. Spencer.  Ms. Teets read A.F.'s written statement.  (Deposition of Brandy Teets at pp. 8, 10 and 14; Spencer Depo. at pp. 137-138.)  Outside the presence of Ms. Spencer, Ms. Teets told A.F. that because of A.F.'s report, they could lose their home; that she did not know what they would do; and, that she would have to get a job.  (Deposition of Brandy Teets at p. 13.)  When Ms. Spencer entered the room, A.F. was in tears and reported what her mother had told her.  (Spencer Depo. at pp. 138-139.)

Ms. Teets called her husband to inform him of the allegations and he came to the school. (Deposition of Kirk Teets at p. 6.)  The guidance counselor involved, Sherry Porach, stated that Mr. Teets seemed "very shocked by what was going on."  (Porach Depo. at p. 25.)  Mr. Teets met with his wife.  (Id. at p. 9; Deposition of Brandy Teets at p. 8.)  Mr. Teets testified during deposition that he wanted to stay at the school but was told to leave my Ms. Spencer.

(Deposition of Kirk Teets at pp. 11-12.)  Plaintiffs assert that Ms. Spencer told Mr. Teets he had

20 minutes to get his things and go to the police station to report that he had raped A.F.

(Deposition of Kirk Teets at p. 11; Deposition of Brandy Teets at pp.8-9.)  Ms. Spencer recalls

Mr. Teets denying the allegations and stating that the allegations would ruin their lives.

(Spencer Depo. at p. 139.)

### 2.      Investigation by the Police.

The Parma Police arrived at the school after Mr. Teets had departed.  Because the

incident complained of by A.F. allegedly occurred in Parma Heights, Ohio, the Parma Heights

Police took over the criminal investigation.  Mr. Teets' cell phone number was given to the

Parma Heights Police by Brandy Teets and he was contacted by the Parma Heights Police.

(Deposition of Brandy Teets at p. 20.)  The Parma Heights Police asked Mr. Teets to come in

and tell his side of the story.  (Deposition of Kirk Teets at p. 14.)  Mr. Teets told police officers

he would come to the police station, but instead met with an attorney.  (Id. at pp. 14-15.)

That same day, A.F. was interviewed by Parma Heights Police Detective Mattison, who

was not one of the uniformed officers who had come to the school.  (Deposition of Brandy Teets

at p. 26.)  Per Detective Mattison's request, Ms. Spencer was present during the interview.  Ms.

Spencer did not ask any questions during that interview.  (Mattison Depo. at p. 209.)  The Police

also acquired a diary, kept by A.F. and a friend, which referenced the alleged incident.

(Plaintiffs' Response to Defendants' Motion for Summary Judgment, at p. 3.)

Beginning on March 28, 2006, A.F. stayed at a friend's home.  (Id.)  On March 30, 2006,

CCDCFS held a "staffing" to discuss the matter.  (Deposition of Kirk Teets at p. 29.)  A "safety

plan" was agreed upon, by which A.F. would remain at a friend's home for the short term.

(Deposition of Brandy Teets at p. 18; Spencer Depo. at. pp. 119-20.)  The other children in the home would remain with Ms. Teets and Mr. Teets would stay out of the home.  (Deposition of Kirk Teets at p. 21.)  This was agreed upon by both Mr. and Mrs. Teets.  (Id. at p. 35.)

Mr. Teets, accompanied by his attorney, met with Detectives Scherschidt and Mattison of the Parma Heights Police Department.  (Deposition of Kirk Teets at p. 22.)  No one from CCDCFS was present at the police station for the interview.  (Id. at p. 23.)  It was agreed that Mr. Teets would complete a "voice stress analyzer" test, a type of lie detector test, to determine whether he was telling the truth.  (Id. at p. 25.)  The test result was "inconclusive" due to his "stress" levels.  (Id. at p. 26.)

Law enforcement officials provided documentation that A.F. had also been given the test and showed "no signs of deception."  (Id. at p. 28.)  CCDCFS was not involved in this testing, but Mr. Teets believed that A.F.'s test was not properly administered.  (Id. at pp. 26-27.)

On April 6, 2006, the lead Detective contacted Ms. Morus, Ms. Spencer's supervisor, and sent her a fax, mentioning the "inconclusive" voice stress analyzer test and indicated that A.F. should not be placed back into the home.  The fax stated that Mr. and Ms. Teets agreed with the arrangement; that A.F. would be re-interviewed by law enforcement; and, that law enforcement wanted A.F. away from Mr. and Mrs. Teets while they continued to investigate the situation.  (See Exhibit 21 to Defendants' Motion for Summary Judgment.)

### 3.  Complaint Filed in Cuyahoga County Juvenile Court.

The placement of A.F. with a family friend did not work out and a second meeting or staffing was held.  CCDCFS determined it needed to file a complaint with the Cuyahoga County Juvenile Court.  The Complaint was filed on April 7, 2006.  (Juvenile Court Case No. 06

9000581.)  Ms. Spencer was the Complainant.  The Complaint alleged abuse and neglect of A.F. by Brandy Teets, and sought temporary custody.  The Complaint alleged that in "late 2005, step father, Kirk Teets, fondled and digitally penetrated the child's vaginal area.  Mother has failed to protect the child from father's inappropriate sexual behavior.  Mother was sexually abused and has failed to address her victimization which impairs her ability to protect the child."  (See Complaint, Exhibit 15 to Defendants' Motion for Summary Judgment.)  Ms. Spencer was the Affiant in support of the Complaint.  (Id.)

### 4.  Investigation Report Filed.

On April 12, 2006, Ms. Spencer completed her investigation and filed her Report, known as an "Investigation and Assessment" with the County.  It was approved by her supervisor, Ms. Morus, on April 13, 2006.  On April 20, 2006, the case was transferred to another CCDCFS unit. (Morus Depo. at pp. 52 and 81; Spencer Depo. at p. 108.)  Except for participation in an interview of another child in the family, the transfer concluded participation of the individually named defendants.

### 5.  Referral of A.F. to MetroHealth for Evaluation.

Prior to the transfer of the case, a referral was made for A.F. to MetroHealth Hospital's Alpha Clinic for an evaluation.  On April 24, 2006, A.F. was seen to evaluate whether there was evidence of sexual abuse.  (See Exhibit 16 to Defendants' Motion for Summary Judgment.)  A.F. presented with symptoms associated with sexual abuse.  (Id.)  The conclusion of the Alpha Clinic was "very suspicious for sexual abuse."  (Id.)

### B.  Juvenile Court Findings.

On January 22, 2007, a Magistrate Judge in Juvenile Court heard the matter and found, as

a matter of fact, that A.F. was sexually abused by her step-father.  (Deposition of Brandy Teets at p. 52; Magistrate's Decision dated January 22, 2007 at pp. 1-2.)  The Judgment was later amended to include a finding that A.F. was an abused child. (Deposition of Brandy Teets at p. 51; Judgment Entry dated February 2, 2007.)  Ms. Teets appealed, but the appeal was dismissed. (Order journalized July 23, 2007.)  No further appeal was made and the entry became final.  In 2009, Ms. Teets consented to CCDCFS's permanent custody of A.F.

### C.  Criminal Charges Against Plaintiffs.

Criminal charges against Plaintiffs were later sought by law enforcement.  A grand jury indicted both Mr. and Mrs. Teets based upon their conduct.  (Mattison Depo. at p. 180; Deposition of Brandy Teets at p. 54.)  Detective Mattison confirmed that there was enough evidence of digital penetration to go to the grand jury.  (Mattison Depo. at pp. 180 and 199.)  The charges against Mr. Teets included rape and gross sexual imposition.  (Id. at p. 180.)

Ms. Teets was indicted on charges including bribery, based upon tape recordings she made of A.F.  (Id. at p. 182.)  Ms. Teets tape recorded A.F. allegedly recanting her allegations and Ms. Teets took the tapes to law enforcement, not CCDCFS.  (Deposition of Brandy Teets at pp. 34-36 and 39.)  Ms. Spencer never heard the tape recording.  (Spencer Depo. at p. 225.)  A.F. told law enforcement that she had been told what to say when the tapes were made.  (Mattison Depo. at pp. 186-87.)

Mr. Teets pled guilty to a misdemeanor charge.  (Deposition of Kirk Teets at p. 45 and Depo. Exhibit 2.)  As part of the Plea Agreement, the charges against Ms. Teets were dismissed. (Id. at p. 45.)  Mr. Teets' sentence included a six month term of incarceration, which was suspended; non-reporting probation; and, no contact with the victim until she is 18 years of age.

(Deposition of Kirk Teets at Exhibit 2.)

**II.     Plaintiffs' Criticism of the Investigation Conducted by Ms. Spencer**

> **A.     Ms. Spencer's Investigation.**

Plaintiffs assert that there were numerous discrepancies in A.F.'s statements regarding the alleged sexual abuse.  Plaintiffs assert that Ms. Spencer failed to recognize inconsistencies in A.F.'s statements and had no basis to believe A.F. to be truthful.  Plaintiffs argue that Ms. Spencer should have given weight to statements by Brandy Teets that A.F. had trouble telling the truth. (Spencer Depo. at p. 71.)  Plaintiffs assert that Brandy Teets told Ms. Spencer that A.F. was angry because her parents had not let her spend a weekend at a friend's house.  (Plaintiffs' Response to Defendants' Motion for Summary Judgment, at p. 3.)

Ms. Spencer testified during deposition that she found A.F. to be credible; believed that an incident had occurred; and, believed that Mr. Teets was lying in his denials.  (Spencer Depo. at p. 65.)

> **B.     Social Worker Assigned Following Ms. Spencer's Investigation.**

Paul Brown was the assigned social worker on A.F.'s case from early May 2006 until late July 2008.  (Deposition of Paul Brown at p. 87.)  Mr. Brown worked in the "ongoing sex abuse unit," which takes over case management after the "intake" department does its initial investigation.  (Plaintiffs' Response Brief at p. 5.)

Mr. Brown testified that just after he received the case, A.F.'s foster parents were asking the County to remove her because she alleged that the foster parents had watched her in the shower or set up a video camera to watch her shower.  (Brown Depo. at pp. 20-21.)  Brown questioned A.F.'s truthfulness.  (Id. at p. 24.)  No investigation was done regarding the

allegations A.F. made about the foster family.  (Id. at pp. 24-25.)  Mr. Brown also testified that he did not recall the allegation against the foster family raising any suspicions with the agency regarding A.F.'s truthfulness in her allegations against Mr. Teets.  (Id. at pp. 26-27.)

While still in foster care, A.F. also alleged sexual abuse by her birth father, Tom Fialko. Mr. Fialko visited with A.F. every other weekend and A.F. alleged that her father sexually abused her on every visit.  (Id. at pp. 28-29.)  Mr. Brown interviewed one of A.F.'s uncles who stated that he had actually been watching A.F. on one of the nights she alleges to have been abused by her father, while her father worked a double shift.  (Id. at pp. 30-31.)  Mr. Brown was unable to substantiate the allegations made by A.F. against Mr. Fialko.  (Id. at pp. 31-32 and 34-35.)

Mr. Brown also recalled Brandy Teets telling him that A.F. had a problem telling the truth. (Id. at p. 31.)  Mr. Brown testified during deposition that, based upon his work on the case, he had questions about the truth of A.F.'s allegations against Mr. Teets.  (Id. at pp. 37-41.)  Mr. Brown testified that he never had any reason to disbelieve anything Kirk or Brandy Teets told him and that they were very cooperative.  (Id. at p. 56-57.)  Mr. Brown testified he was afraid to be alone with A.F.  (Brown Depo. at pp. 50-51.)  No action was taken by the agency to revisit the allegations A.F. made against Mr. Teets.

### C.    Recantation.

Plaintiffs assert that A.F. recanted her allegations against Mr. Teets on two occasions – once when the case was assigned to Ms. Spencer and once when the case was assigned to Mr. Brown.  (Plaintiffs' Response at p. 8.)  Ms. Spencer stated she believed that A.F. was pressured into recanting the allegations against Mr. Teets; that A.F. said the recantation was a lie she told

to please Ms. Teets; and, that she did not question A.F.'s truthfulness despite the fact she later retracted her recantation of the allegations. (Spencer Depo. at pp. 68-69.) Ms. Spencer stated during deposition that A.F. provided a consistent account of the alleged abuse.

Plaintiffs list ten examples of alleged inconsistencies in A.F.'s statements. Plaintiffs list nine examples of alleged misrepresentations and falsehoods by Ms. Spencer. (Plaintiffs' Response Brief at pp. 9-12.)

### III. Plaintiffs' Complaint

On March 27, 2008, Plaintiffs filed their Complaint, raising claims pursuant to 42 U.S.C. § 1983. First, Plaintiffs assert that Defendants made knowingly false allegations of child sexual abuse against Kirk Teets; omitted information that would have exonerated Kirk Teets; and, made false allegations against Brandy Teets, thereby violating Plaintiffs' due process rights under the Fourteenth Amendment. Second, Plaintiffs assert that Defendants used intentional falsehoods in the decisions made to deprive Plaintiffs of the custody of their child, thereby violating Plaintiffs' liberty interests in rights to personal choice in matters of family, as guaranteed by the Fourteenth Amendment. Third, Plaintiffs assert that "Defendants' actions in gathering and presenting false information to other county officials and to the Cuyahoga County Juvenile Court regarding plaintiffs' parenting, constitutes malicious purpose, bad faith, wanton conduct and/or reckless conduct." Fourth, Plaintiffs assert that Defendants' actions constitute "a policy and procedure of violating citizens rights," in violation of *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

### IV. Defendants' Motion for Summary Judgment

On January 11, 2010, Defendants filed their Motion for Summary Judgment. (Docket #21.) On March 13, 2010, Plaintiffs' filed their Brief in Response. (Docket #23.) On

-9-

April 2, 2010, Defendants filed their Reply Brief.  (Docket #28.)

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

-10-

nonmoving party.  The nonmoving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't*

*of Transp.*, 53 F.3d 146, 149 (6ᵗʰ Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for

summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred

with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered

by the trial court in ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d

222, 225-26 (6ᵗʰ Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181

(9ᵗʰ Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be
> made on the basis of personal knowledge, set forth admissible evidence, and show
> that the affiant is competent to testify.  Rule 56(e) further requires the party to
> attach sworn or certified copies to all documents referred to in the affidavit.
> Furthermore, hearsay evidence cannot be considered on a motion for summary
> judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may

be considered by the district court unless the opposing party affirmatively raises the issue of the

defect.

-11-

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### Discussion

The Court has thoroughly and exhaustively reviewed all of the claims raised by Plaintiffs in this action; Defendants' Motions for Summary Judgment; and, all supporting documentation, including a detailed analysis of the deposition testimony and evidentiary materials submitted by both Parties.  Reviewing the summary judgment motion in the light most favorable to Plaintiffs, there are no genuine disputes as to any material facts in this case and Defendants are entitled to summary judgment as a matter of law.  The basis for all of Plaintiffs' claims is the assertion that

Defendants made knowingly false allegations of child abuse against Plaintiffs. There is no evidence in the record to support this assertion.

Plaintiffs point to alleged "inconsistencies or discrepancies in A.F.'s story" which they argue "should have led the defendant to doubt her veracity."  The Court has reviewed each of these alleged "inconsistencies or discrepancies," and related documents and deposition testimony.  While Plaintiffs believe a different determination by CCDCFS was warranted, the alleged "inconsistencies or discrepancies" listed by Plaintiffs are immaterial to the claims raised by Plaintiffs in this case.  There is no factual basis for Plaintiffs' assertion that Ms. Spencer intentionally fabricated evidence in an effort to support a finding of sexual abuse against Mr. Teets or that she failed to thoroughly investigate the claims of sexual abuse raised by A.F. Therefore, Defendants are entitled to summary judgment as a matter of law.

**I.      Substantive Due Process.**

To succeed on a claim for a violation of § 1983, the plaintiff must show that: (1) a person; (2) acting under color of state law; (3) deprived him of his rights secured by the United States Constitution of its laws. *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. Tenn. 2001). By its terms, Section 1983 creates no substantive rights – it merely provides a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 815, 105 S. Ct. 24, 27, 85 L. Ed. 2d 791 (1985).

Parents have a Fourteenth Amendment liberty interest in making decisions regarding the custody and control of their children and all family members enjoy a First Amendment right to familial association.  *AbdulSalaam v. Franklin County Bd. of Comm'rs*, 637 F. Supp. 2d 561, 583 (S.D. Ohio 2009) (citing *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L.

Ed. 2d 49 (2000)). However, the right to familial association is not absolute and must be balanced by "an equally compelling governmental interest in the protection of children." *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. Ohio 2006).[1]  Government investigation into allegations of child abuse normally do not violate the right to familial association, unless there is evidence that the investigation was undertaken in bad faith or with a malicious motive or if tactics used to investigate would "shock the conscience." *Id.* at 690-91.

Aside from bald assertions, Plaintiffs have produced no evidence that the investigation of A.F.'s allegations against Mr. Teets; the agreed upon "safety plan;" or, the subsequent legal proceedings, were undertaken in bad faith or with a malicious motive.  There is no evidence that Defendants fabricated or misrepresented the evidence compiled during the investigation.  Even assuming that Mr. Teets, as A.F.'s step-father, may assert the right to familial association, there is no evidence that the methods by which the claims were investigated or dealt with by Defendants were conscience shocking.  Based on the foregoing, Plaintiffs' substantive due process claim that their right to familial association was violated fails as a matter of law.

## II.      Procedural Due Process.

"A parent's liberty interest in familial association is implicated where a child is removed from his or her parent's care and custody.  Thus, a state agent must provide sufficient due process before removing a child from his or her parent's care and custody," except in emergencies.  *Kottmyer*, 436 F.3d at 690-91.

---

[1]

"The right is limited by an equally compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents." *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006) (quoting *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1997)).

-14-

To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) that they were deprived of this protected interest within the meaning of the Due Process Clause; and, (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. Ohio 1999). The plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. *Id.* (citing *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. Ohio 1983)).

With regard to the adequacy of pre-deprivation procedural rights, a party must show that "(1) the state did not have a remedy; (2) the state had a remedy but it was deemed inadequate; (3) the state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy." *Haaq v. Cuyahoga County*, 619 F. Supp. 262, 278-79 (N.D. Ohio 1985).

Plaintiffs assert "that there were no pre-deprivation hearings" prior to A.F. being taken from their home; that the "shelter in care hearing" was inadequate "because Spencer had already made up her mind that Kirk Teets was guilty;" and, that Mr. Teets should have been a party to the Juvenile Court proceedings.  Further, Plaintiffs state that Brandy Teets was deprived of her rights to familial association without due process.  Plaintiffs continue to assert that proceedings were procedurally flawed because of the alleged intentional misrepresentations by Ms. Spencer.

The evidence in this case shows that after the allegations of abuse were made by A.F., she went to stay at a friends' home.  On March 30, 2006, both Mr. and Mrs. Teets agreed to the "safety plan," by which A.F. would remain at the friends' home; the other children in the family

-15-

would remain with Mrs. Teets; and, Mr. Teets would stay out of the home.  (Deposition of

Brandy Teets at p. 18; Deposition of Kirk Teets at p. 35; Spencer Depo. at pp. 119-20.)  "When a

parent voluntarily consents to a safety plan, 'no hearing of any kind is necessary; hearings are

required for deprivations taken over objection, not for steps authorized by consent.'" *Smith v.

Williams-Ash*, 520 F.3d 596, 600 (6th Cir. Ohio 2008) (quoting *Dupuy v. Samuels*, 465 F.3d 757,

761-62 (7th Cir. Ill. 2006).  There is no evidence that Plaintiffs sought to revoke their consent to

the "safety plan" or that a request by Plaintiffs to revoke consent was denied.

On April 7, 2006, only one week after the "safety plan" was agreed to by Plaintiffs,

CCDCFS filed its Complaint with the Cuyahoga County Juvenile Court because A.F.'s

placement with the friend did not work out.  Although Mr. Teets was not named in the Juvenile

Court Complaint, there is no evidence to support the claim that he was prohibited from

participating, nor is there evidence that attempts to intervene in the Juvenile Court action were

denied.  In their Response Brief, Plaintiffs state that Mr. Teets "was not even allowed in court,

was not represented by counsel and had no ability to be heard on the issue of whether he had

abused A.F. (except by a decision by his wife's attorney, who cannot be said to be looking out

for Mr. Teets' constitutional rights when he was not her client)."  The fact that Mr. Teets was not

represented by counsel and the choices made by Ms. Teets' attorney do not amount to a

governmental deprivation of Mr. Teets' rights.

The Juvenile Court determined that A.F. suffered abuse and was an "abused child."  The

trial on the merits provided the process that was due Brandy Teets.  The Juvenile Court decision

was appealed by Brandy Teets and her appeal was denied.  There is no evidence that Ms.

Spencer failed to thoroughly investigate A.F.'s claims; ignored evidence; or, misrepresented the

facts.  Further, this Court cannot relitigate the State court findings of abuse.

Plaintiffs' procedural due process rights were not violated.  Accordingly, these claims fail as a matter of law.

**III.    Criminal Charges.**

In addition to the foregoing, there is no basis upon which Plaintiffs can succeed on their claim that the filing of criminal charges against the Teets and CCDCFS's issuance of an "indicated" finding of abuse violated their Constitutional rights.  Again, there is nothing to substantiate the allegation that Defendants intentionally misrepresented the facts in this case or failed to properly investigate the claims made by A.F.  The "indicated" finding of abuse was based upon a review of the evidence compiled by CCDCFS during the investigation of the allegations of sexual abuse made by A.F. against Mr. Teets.  By law, CCDCFS was required to report the allegations of abuse, and Mr. Teets' name was placed on a confidential, central registry, maintained by the State of Ohio.

Further, the criminal investigation of Mr. and Mrs. Teets was conducted by the Parma Heights Police Department, and the evidence against Mr. and Mrs. Teets came from various sources, not just CCDCFS. Any claim based on the filing of criminal charges and CCDCFS's issuance of an "indicated" finding of abuse fails as a matter of law.

**IV.    Absolute/Qualified Immunity.**

There is no factual support for the claims raised by Plaintiffs.  To the extent that Plaintiffs bring claims against Ms. Spencer and Ms. Morus relative to the Juvenile Court proceedings, both are entitled to absolute immunity.  *Rippy v. Hattaway*, 270 F.3d 416, 421 (6th

-17-

Cir. 2001); *Brisco v. LaHue*, 460 U.S. 325, 103 S. Ct. 1108, 75. L. Ed. 2d 96 (1982).  "Social workers are absolutely immune . . . when they are acting in their capacity as legal advocates – initiating court actions or testifying under oath." *Holloway v. Brush*, 220 F.3d 767, 777 (6th Cir. Ohio 2000)

Plaintiffs assert that Ms. Spencer and Ms. Morus are not entitled to absolute immunity, alleging that Ms. Spencer made misrepresentations; Ms. Morus ratified Ms. Spencer's misrepresentations, and, therefore, that they were not acting as advocates.  *See Pittman v. Cuyahoga County Department of Children and Family Services*, 2009 U.S. Dist. LEXIS 72514, at *6 (N.D. Ohio Aug. 17, 2009).  However, as stated above, the record contains no evidence of misrepresentations made by Ms. Spencer.  Accordingly, there is no basis to find that she and/or Ms. Morus weren't acting as advocates in conjunction with the proceedings in Juvenile Court.

In addition to the foregoing, both Ms. Spencer and Ms. Morus are entitled to qualified immunity.  Qualified immunity protects government officials performing discretionary functions from civil suits if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  In determining whether qualified immunity is warranted, a court must ask (1) whether the alleged facts, taken in a light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established in the specific context so that a reasonable official would understand that he is violating that right.  *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A court need not address these steps in any particular order, nor must a court address both steps if the defendant makes an insufficient

-18-

showing on one.  *Pearson v. Callahan*, 129 S. Ct. 808, 821, 172 L. Ed. 2d 565 (U.S. 2009).

In this case, the alleged facts, taken in a light most favorable to Plaintiffs, do not support their Constitutional claims.  The evidence demonstrates that Ms. Spencer investigated the circumstances in this case and that the allegations in this case were reviewed not only by Defendants, but by law enforcement and medical personnel.  There is no evidence that Ms. Spencer provided false information regarding the claims raised by A.F. and/or their investigation; failed to thoroughly investigate A.F.'s claims; ignored key evidence; acted recklessly; or, treated Mr. Teets "as though he was guilty until proven innocent."  Accordingly, Defendants Spencer and Morus are entitled to qualified immunity on Plaintiffs' claims.

### V.      Supervisor Liability.

Plaintiffs allege that Ms. Morus failed to supervise Ms. Spencer.  A supervisor cannot be held liable under Section 1983 where the plaintiff's allegations are based on a failure to act. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. Ky. 2006)

To be liable, the supervisor "must have actively engaged in unconstitutional behavior." *Id.*  A supervisor's mere failure to supervise is insufficient – the plaintiff must "show that the supervisors somehow encouraged or condoned the actions of their inferiors."  *Id.* at pp. 751-52. Plaintiffs have failed to present evidence of unconstitutional behavior on the part of Ms. Spencer. Accordingly, there is no basis upon which Ms. Morus is liable in a supervisory capacity.

### VI.     *Monell* claim.

In order to hold a municipality liable under § 1983, the claimant must show that the employee violated his or her rights in accordance with a pertinent policy or custom of the

-19-

municipality. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611(1978). "To satisfy the Monell requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. Tenn. 1993)  (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. Mich.1987), *cert. denied*, 114 S. Ct. 1219 (1994)).

A "custom" for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.  *Doe v. Claiborne County*, 103 F.3d 495, 507-08 (6th Cir. Tenn. 1996) (internal quotation marks and citations omitted).

As stated above, there is no evidence of a Constitutional violation in this case.  Further, there is no evidence of a policy or custom of the County by which those accused of abuse are "guilty until proven innocent," as is suggested by Plaintiffs.  Plaintiffs rely upon the testimony of Ms. Morus, Ms. Spencer's supervisor, who testified that CCDCFS "believes the victim until there's a reason not to believe them."  Plaintiffs claim that this is a "policy" that "virtually guarantees that a person, once accused of abuse, will not be able to escape some sort of unconstitutional intrusion by the County."  (Response Brief at p. 22.)

Plaintiffs' characterization of Ms. Morus' testimony is misleading.  Ms. Morus testified that CCDCFS proceeds under the assumption that the allegations have been brought in good faith by the accuser, and the investigation undertaken by CCDCFS then either confirms or

-20-

refutes the allegations raised.  Ms. Morus stated, "[T]he last thing we're going to do is make them feel that we don't believe them when we're talking with them.  We want them to be able to feel free to talk about what they need to speak about and disclose and feel comfortable doing that."  (Morus Depo. at p. 23.)

Ms. Morus testified, in detail, about the procedures used to investigate claims of child sexual abuse, as well as the training sex abuse workers must complete.  Ms. Morus stated that during the investigation, CCDCFS is looking for evidence that the victim is credible and to corroborate the allegations made.  Contrary to the assertions of Plaintiffs, this does not equate with a permanent and well-settled custom of requiring the accused to prove his innocence.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' *Monell* claim as a matter of law.

## Conclusion

Based on the foregoing, Defendants are entitled to summary judgment as a mater of law as to all of Plaintiffs' claims.  Defendants' Motion for Summary Judgment (Docket #21) is GRANTED.  This case is hereby TERMINATED.

IT IS SO ORDERED.

s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:  May 12, 2010

-21-